## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Strike 3 Holdings, LLC,<br><br>               Plaintiff,<br><br>v.<br><br>John Doe subscriber assigned IP address 24.118.222.86,<br><br>               Defendant. | Case No. 18-cv-0771 (DWF/HB)<br><br><br>**ORDER** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiff Strike 3 Holdings, LLC's ex parte Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference [Doc. No. 5]. The motion is granted, as set forth below.

## I.    Background

On March 21, 2018, Strike 3 Holdings, LLC ("Strike 3") filed eight cases against John Doe defendants in the District of Minnesota: *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-00768 (DSD/FLN); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-00771 (DWF/HB); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-00773 (JRT/DTS); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-00774 (DWF/DTS); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-00775 (PJS/SER); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-00777 (JRT/BRT); *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-00778 (PJS/HB); and *Strike 3 Holdings, LLC v. Doe*, No. 18-cv-00779 (WMW/SER). Strike 3 alleges similar claims of copyright infringement in each case, and has also filed in each case an ex parte motion requesting

permission to serve a third-party subpoena before the Rule 26(f) pretrial scheduling conference.

In the case at hand, Strike 3 alleges that the John Doe Defendant ("Defendant") committed copyright infringement by unlawfully downloading and distributing Strike 3's copyrighted movies.  (Compl. ¶¶ 1, 4 [Doc. No. 1].)  Strike 3 distributes its copyrighted movies through adult websites and DVDs.  (Compl. ¶ 3.)  According to Strike 3, Defendant used a BitTorrent file distribution protocol to download the movies and illegally distribute them over the internet.  (Compl. ¶ 4.)  An investigator employed by Strike 3, IPP International U.G., allegedly was able to establish a direct TCP/IP connection with Defendant's Internet Protocol ("IP") address while Defendant was using the BitTorrent file distribution network, and downloaded one or more copyrighted media files.  (Compl. ¶¶ 24–25.)  Strike 3 has not been able to identify Defendant other than by his or her IP address, but alleges that Defendant's Internet Service Provider ("ISP") Comcast Cable Communications, LLC ("Comcast") would be able to identify the alleged infringer by name and address using the IP address.  (Compl. ¶ 5.)

Strike 3 filed its motion for leave to serve a third-party subpoena on April 19, 2018.  Despite hiring an investigator and forensic expert, Strike 3 contends that it has been able to identify Defendant only by his or her IP address, and that only Comcast can correlate the IP address with Defendant's identity.  (Pl.'s Mem. Supp. Mot. Leave Serve Subpoena at 1–2 [Doc. No. 7].)  Strike 3 argues that it needs to learn Defendant's name and address so that it can investigate Defendant's role in the alleged copyright infringement and serve the summons and complaint on Defendant.  (Pl.'s Mem. at 2.)  To

accomplish this, Strike 3 seeks leave to serve a Rule 45 subpoena on Comcast before the Rule 26(f) conference is held in this matter.

## II.  Discussion

### A.  Relevant Legal Standards and Case Authority

Rule 26(d) prohibits a party from "seek[ing] discovery from any source before the parties have conferred as required by Rule 26(f), except …when authorized by these rules, by stipulation, or by court order."  Fed. R. Civ. P. 26(d)(1).  This rule creates a Catch-22 for Strike 3: It is not able to confer with Defendant as required by Rule 26(f) because it cannot identify Defendant, but it cannot identify Defendant without discovery from Comcast.

Though the Eighth Circuit Court of Appeals has not adopted a standard to govern when a court should permit expedited discovery, district courts in the Eighth Circuit have generally applied a "good cause" standard in determining whether early discovery is appropriate.  *E.g.*, *Planned Parenthood Ark. & E. Okla. v. Gillespie*, No. 4:15-cv-566-KGB, 2018 WL 1904845, at *1 (E.D. Ark. Mar. 20, 2018); *Nilfisk, Inc. v. Liss*, No. 17-cv-1902 (WMW/FLN), 2017 WL 7370059, at *7 (D. Minn. June 15, 2017); *Loeffler v. City of Anoka*, No. 13-cv-2060 (MJD/TNL), 2015 WL 12977338, at *1 (D. Minn. Dec. 16, 2015); *Oglala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453, 455 (D.S.D. 2014); *Wachovia Sec., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1050 (N.D. Iowa 2008); *Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008).  Before the Court engages in a "good cause" analysis here, however, it will be informative to set the stage with two decisions by the Eighth Circuit Court of Appeals, which, though not directly on

point, provide at least persuasive authority on the issue before the Court.

In *Killer Joe Nevada, LLC v. Does 1–20*, 807 F.3d 908 (8th Cir. 2015), a copyright owner sued several John Doe defendants, identified in the complaint only by their IP addresses, for downloading copyrighted films through a BitTorrent computer program. *Id.* at 910–11.  The plaintiff subpoenaed the respective ISPs to identify the subscriber at each IP address.  *Id.* at 911.  After a subscriber was identified, the plaintiff amended the complaint to name the subscriber as the defendant.  *Id.*  After one of the identified defendants denied downloading the film, the plaintiff moved to voluntarily dismiss her, but the defendant opposed the dismissal unless she was awarded attorney's fees.  *Id.*  In addressing whether dismissal was proper, the Eighth Circuit considered whether it was "unreasonable for a Copyright Act plaintiff to sue the subscriber without first investigating whether the subscriber was responsible for the infringement."  *Id.* at 912. The court concluded it was not unreasonable.  A plaintiff in a copyright infringement action "*may* properly sue 'John Doe' to ascertain the ISP subscriber."  *Id.* (citing *In re Charter Commc'ns Inc., Subpoena Enf't Matter*, 393 F.3d 771, 774, 775 n.3 (8th Cir. 2005) (emphasis in *Killer Joe Nevada*).  The court quoted the following explanation from *Charter Communications*: "Only the ISP . . . can link a particular IP address with an individual's name and physical address"; plaintiffs can seek "third-party discovery of the identity of the otherwise anonymous 'John Doe' defendant" from the ISP.  *Killer Joe Nevada*, 807 F.3d at 912 (quoting *Charter Communications*, 393 F.3d at 774, 775 n.3).

In the *Charter Communications* case, the Eighth Circuit explicitly endorsed, albeit in a footnote, the procedure that Strike 3 seeks to employ here, explaining:

> This case has wide-reaching ramifications, because as a practical matter, copyright owners cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of persons engaged in that activity.  However, [copyright owners] can also employ alternative avenues to seek this information, such as "John Doe" lawsuits.  In such lawsuits, many of which are now pending in district courts across the country, [copyright owners] can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous "John Doe" defendant.

*In re Charter Commc'ns*, 393 F.3d at 775 n.3.

Turning to authority applying the "good cause" standard for early discovery, the Court takes note of two decisions recently issued in the District of Connecticut: *Malibu Media, LLC v. Doe*, No. 3:18-cv-590 (CSH), 2018 WL 2045998, at *1 (D. Conn. May 2, 2018); and *Strike 3 Holdings, LLC v. Doe*, No. 3:17-cv-1680 (CSH), 2017 WL 5001474, at *2 (D. Conn. Nov. 1, 2017).  In both cases, the court found good cause for the early discovery under the following factors endorsed by the Second Circuit Court of Appeals:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy.

*Malibu Media*, 2018 WL 2045998, at *1 (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (quotation omitted)) (alterations in *Arista Records*); *Strike 3 Holdings*, 2017 WL 5001474, at *2 (quoting *Arista Records*, 604 F.3d at 119) (quotation omitted) (alterations in *Arista Records*).  The Connecticut court granted the motion for early discovery, but imposed certain procedural safeguards, such as affording an opportunity for the defendant to contest the subpoena and limiting the plaintiff's use of the information.  *Malibu Media*, 2018 WL 2045998, at *7; *Strike 3 Holdings*, 2017 WL 5001474, at *6.

In other cases commenced by Strike 3 in the District of Minnesota, the courts are divided on the propriety of early discovery. Two magistrate judges have concluded that the Doe defendants' privacy interests outweigh Strike 3's property interests, and thus denied the motions for early discovery. *See Strike 3 Holdings*, No. 18-cv-00773 (JRT/DTS), slip op. at 7 (D. Minn. Apr. 30, 2018) [Doc. No. 14], *appeal docketed* (May 11, 2018) [Doc. No. 15]; *Strike 3 Holdings*, No. 18-cv-00774 (DWF/DTS), slip op. at 7 (D. Minn. Apr. 30, 2018) [Doc. No. 13], *appeal docketed* (May 11, 2018) [Doc. No. 14]; *Strike 3 Holdings*, No. 18-cv-00768 (DSD/FLN), 2018 WL 1924455, at *3 (D. Minn. Apr. 24, 2018), *appeal docketed* (May 8, 2018) [Doc. No. 15]. A third magistrate judge has found good cause under the *Arista Records* factors to allow early discovery. *Strike 3 Holdings*, No. 18-cv-00777 (JRT/BRT), 2018 WL 2078707, at *1–3 (D. Minn. May 4, 2018). That court issued a limited protective order to protect the ISP subscriber's identity in case he or she is an innocent third party and in recognition of the sensitive and personal nature of the subject matter of the case. *Id.* at *4.

The *Strike 3* lawsuits do not mark the first time a wave of cases has been filed in this District, in which a plaintiff suing Doe defendants for copyright infringement has sought leave to engage in early discovery. *E.g.*, *AF Holdings LLC v. Doe*, No. 12-cv-1445 (JNE/FLN) (D. Minn. filed June 15, 2012); *Quad Int'l, Inc. v. Doe*, No. 12-cv-2681 (RHK/JJG) (D. Minn. filed Oct. 19, 2012). In those cases, the courts granted the motions to issue third-party subpoenas to the defendants' ISPs before the pretrial scheduling conference, finding good cause for the early discovery on the ground that the plaintiffs otherwise would not have been able to ascertain the identities of the defendants or

6

effectuate service.  *E.g.*, *AF Holdings*, No. 12-cv-1445 (JNE/FLN), slip op. at 2

(D. Minn. Aug. 3, 2012) [Doc. No. 10]; *Quad Int'l, Inc. v. Doe*, No. 12-cv-2681

(RHK/JJG), slip op. at 4, 6 (D. Minn. Nov. 28, 2012) [Doc. No. 14].

###### B.    Strike 3's Motion for Early Discovery in This Case

With the benefit of the authority recounted above, the Court now turns to the

present motion.  The Court finds that the factors expressed by *Arista Records* provide a

solid framework for the analysis, and concludes there is good cause to allow the early

discovery.

First, Strike 3 has stated an actionable claim for copyright infringement.  "The

elements of copyright infringement are (1) ownership of a valid copyright and

(2) copying of original elements of the copyrighted work."  *Warner Bros. Entm't v.

X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011).  Strike 3 alleges that it is the owner of

copyrighted works; that Defendant copied and distributed the works owned by Strike 3;

and that Strike 3 did not authorize Defendant's distribution of the copyrighted works.

(Compl. ¶¶ 2, 4, 23, 37.)  This is sufficient to state a plausible claim for copyright

infringement.

Second, the discovery request is specific.  Strike 3 seeks only Defendant's name

and address.  This limited information is "highly specific."  *E.g.*, *Strike 3 Holdings, LLC

v. Doe*, No. 17-cv-9654 (AT) (KNF), 2018 WL 1737217, at *1 (S.D.N.Y. Mar. 12, 2018);

*Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 24.90.139.137*, No. 15-

cv-7788 (KMW), 2016 WL 1651869, at *2 (S.D.N.Y. Apr. 26, 2016).

Third, there are no alternative means to ascertain Defendant's name and address.

Strike 3 has provided a declaration from forensic analyst John S. Pasquale, a senior project manager at a cyber security firm that specializes in network security, data breaches, and the protection of secured information transmitted across networks. (Pasquale Decl. ¶ 3 [Doc. No. 12].)  Pasquale attests that, based on his experience in similar cases, Comcast is the only entity that can match the IP address to the subscriber and thus identify Defendant.  (Pasquale Decl. ¶ 10.)  Courts routinely find this to be true. *E.g.*, *Strike 3 Holdings*, 2017 WL 5001474, at *4 (granting motion for early discovery in part because the only identifying information the plaintiff had about the defendant was the defendant's IP address, and only the defendant's ISP could correlate the IP address with the subscriber); *Malibu Media, LLC v. Doe*, No. 14-cv-4808 (JS) (SIL), 2016 WL 4574677, at *7 (E.D.N.Y. Sept. 1, 2016) (where a plaintiff knows a defendant only by an IP address and the ISP can identify the defendant, noting "other courts have held in similar situations that viable alternative means of identifying a defendant do not exist," and citing cases); *Arista Records, L.L.C. v. Does 1–54*, No. 4:08-cv-1289 (CEJ), 2008 WL 4104563, at *1 (E.D. Mo. Aug. 29, 2008) (granting early discovery from an ISP in part because "Plaintiffs are unable to obtain the subscribers' names by any other means, and without this information the case cannot proceed").

     Though the Digital Millennium Copyright Act ("DMCA") permits a copyright owner to "request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection," 17 U.S.C. § 512(h)(1), the provision "does not allow a copyright owner to request a subpoena for an ISP which merely acts as a conduit for data transferred between

8

two internet users," *In re Charter Commc'ns*, 393 F.3d at 776.  Here, Comcast was a mere conduit of data between two internet users, and thus the DMCA does not authorize a subpoena to identify the alleged infringer.  *See Strike 3 Holdings*, No. 18-cv-00777 (JRT/BRT), slip op. at 4–5; *Malibu Media, LLC v. Does 1–16*, No. 12-CV-0235 RLW, 2012 WL 1681819, at *1 n.2 (D.D.C. Apr. 11, 2012).  This does not mean, however, that the DMCA *prohibits* the issuance of a subpoena in these circumstances, but only that it does not provide specific authorization to do so.  Here, as noted, Rule 26(d)(1) permits the Court to authorize early discovery "from any source," provided good cause is shown.

Fourth, Strike 3 must know Defendant's name and address in order to serve the summons and complaint.  *See Strike 3 Holdings*, 2018 WL 2078707, at *3; *Strike 3 Holdings*, 2017 WL 5001474, at *4; *Arista Records*, 2008 WL 4104563, at *1.  Without Defendant's name and address, Strike 3 cannot prosecute its claim.

Fifth, the Court finds that Defendant's expectation of privacy in his or her name and address is outweighed by Strike 3's right to use the judicial process to pursue a plausible claim of copyright infringement, especially given that the Court can craft a limited protective order pursuant to Federal Rule of Civil Procedure 26(c) to protect an innocent ISP subscriber and to account for the sensitive and personal nature of the subject matter of this lawsuit.  In arriving at this finding, the Court has given particular consideration to the following points.

In the criminal law context, courts have held that subscribers do not have a legitimate expectation of privacy in files downloaded or distributed with file-sharing software, or even in a computer on which file-sharing software is installed.  *United States*

*v. Stults*, 575 F.3d 834, 842 (8th Cir. 2009).  Some courts have found this principle

relevant in the civil context where a plaintiff seeks to discover the identity of a defendant

accused of copyright infringement.  *See, e.g.*, *Malibu Media*, 2018 WL 2045998, at *4–5.

Courts have also considered that although the Communications Act, 47 U.S.C.

§ 551, prohibits a cable operator from disclosing a subscriber's personally identifiable

information,[1] it also provides several exceptions to this prohibition, including when the

disclosure is made pursuant to a court order and the subscriber is notified.

§ 551(c)(2)(B).  Many courts have authorized subpoenas to be issued under

§ 551(c)(2)(B) when a plaintiff needs to ascertain from an ISP the identity of a defendant

accused of copyright infringement.  *See, e.g.*, *Malibu Media*, 2018 WL 2045998, at *5–6;

*Malibu Media, LLC v. Doe*, No. 18-cv-10667, 2018 WL 1122012, at *2 (E.D. Mich.

Mar. 1, 2018); *Cobbler Nevada, LLC v. Doe*, No. 8:15-cv-2651-T-36AEP, 2015 WL

12856754, at *1 (M.D. Fla. Dec. 8, 2015).

The Court acknowledges that Defendant, the subscriber, may not have been the

actual alleged infringer.  "The fact that a copyrighted work was illegally downloaded

from a certain IP address does not necessarily mean that the owner of that IP address was

the infringer."  *Media Prods., Inc. v. Does 1–26*, No. 12-cv-3719, 2012 WL 2190613, at

*1 (S.D.N.Y. June 12, 2012).  The actual alleged infringer could be anyone with access to

the subscriber's internet connection, such as a family member, houseguest, customer, or

neighbor.  *Id.*  This creates "a real risk that defendants might be falsely identified and

forced to defend themselves against unwarranted allegations."  *Id.*  The risk may be

---

[1]  *See* § 551(c)(1); *Strike 3 Holdings*, 2018 WL 1924455, at *2.

minimized in this case, however, by giving Defendant advance notice of the subpoena,

allowing Comcast and/or Defendant to ask for a more expansive protective order, and by

limiting Strike 3's use of the information.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff Strike 3 Holdings, LLC's

ex parte Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f)

Conference [Doc. No. 5] is **GRANTED** as follows:

1. Plaintiff may serve a subpoena pursuant to Federal Rule of Civil Procedure 45 on Defendant's ISP, Comcast Cable Communications, LLC ("Comcast"). The subpoena must be limited to one category of documents identifying the particular subscriber identified in the Complaint. The requested information must be limited to the name and address of the subscriber assigned to the IP address identified in the Complaint during the time period/s of the alleged infringing activity referenced in Exhibit A to the Complaint [Doc. No. 1-1]. Plaintiff must serve a copy of this Order together with the subpoena.

2. The subpoena must set a date for production that is not less than sixty-five (65) days from the date of the subpoena. Nothing in this Order precludes Comcast from seeking a protective order if it determines there is a legitimate basis for doing so.

3. Within fourteen (14) days after service of the subpoena, Comcast must notify the subscriber whose identity is sought that his or her name and address have been subpoenaed by Plaintiff. Notification may be made by any reasonable means, including by written notice sent to the subscriber's last known address via first-class mail. Comcast must provide a copy of this Order with the required notice to the subscriber.

4. The subscriber shall have forty-five (45) days from the date of the notice from Comcast to move to quash the subpoena. If the subscriber files a motion to quash the subpoena within that time, Plaintiff must immediately notify Comcast of that motion and Comcast shall not produce the information until that motion has been decided. In no event shall Comcast produce the requested information to Plaintiff earlier than sixty-five (65) days from the date of the subpoena.

5. Comcast must give immediate notice to the subscriber upon production to Plaintiff of the requested information, including the specific information produced and the date the production was made.

6. Whether or not the subscriber moves to quash the subpoena, the subscriber may at any time prior to production of the information by Comcast or up to forty-five (45) days after such production file a motion seeking a protective order that permits the subscriber to proceed anonymously or imposes other terms or limitations as provided by Federal Rule of Civil Procedure 26(c)(1).

7. Plaintiff must keep the information received from Comcast confidential and must not disclose it publicly or to third persons for forty-five (45) days following production by Comcast or, if a timely motion for protective order is filed by the subscriber, until that motion is ruled on by the Court, whichever is later. If the subscriber fails to file a timely motion for a protective order, this limitation on the disclosure of the information will terminate after forty-five (45) days following production by Comcast.

8. If the subscriber includes identifying information in his or her motion for a protective order, the Court finds good cause to order the documents containing that information filed under temporary seal until the Court has the opportunity to rule on the motion and to consider whether such documents should remain under seal.

9. Plaintiff may use any information produced by Comcast in response to the subpoena only for the purpose of protecting and enforcing Plaintiff's rights as set forth in its Complaint and for no other purpose. This limitation on the use of the information will not expire absent further order of the Court.

10. On or before August 15, 2018, Plaintiff must e-file a status report with the Court briefly outlining the progress of the discovery authorized by this Order. The status report must not include any identifying information about the subscriber.

11. No other discovery is authorized at this time.

Dated:  May 18, 2018                           s/ Hildy Bowbeer
                                               HILDY BOWBEER
                                               United States Magistrate Judge